UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No. 20-mc-81924-SMITH/MATTHEWMAN

AVI SCHOTTENSTEIN, and
EVAN SCHOTTENSTEIN,

      Petitioners,

vs.

WELLS FARGO BANK, N.A.,
and ALEXIS SCHOTTENSTEIN,

      Respondents.

_____/

FILED BY _____KJZ_____ D.C.

Dec 17, 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## ORDER DENYING PETITION TO ENFORCE ARBITRATION SUBPEONAS [DE 1] DUE TO LACK OF SUBJECT MATTER JURISDICTION

**THIS CAUSE** is before the Court upon Petitioners, Avi Schottenstein and Evan Schottenstein's ("Petitioners") Petition to Enforce Arbitration Subpoenas ("Petition") [DE 1]. This matter was referred to the undersigned by the Honorable Rodney Smith, United States District Judge. *See* DE 8. The Court held a hearing on the Petition via Zoom video teleconference on December 3, 2020. At the conclusion of that hearing, the Court required supplemental briefing on the issue of whether this Court has subject matter jurisdiction in this case. The parties have filed their supplemental briefs [DEs 23, 24, 25]. This matter is now ripe for review.

### I.      BACKGROUND

The case currently before this Court is a proceeding to enforce arbitration subpoenas (summonses) arising under Section 7 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 7. [DE 1, p. 2]. This federal court proceeding was filed by Petitioners, who are Respondents in the pending arbitration proceeding, and it requests that this federal court enforce two subpoenas for witness

1

testimony and documents at the arbitration proceeding scheduled in the near future. One subpoena is issued to Wells Fargo Bank, N.A., and the second subpoena is issued to Alexis Schottenstein. The arbitration proceeding is pending in this District and is styled *Beverley B. Schottenstein, individually and as Co-Trustee Under the Beverly B. Schottenstein Revocable Trust U/A/D April 5, 2011, as Amended, Claimant v. JP Morgan Securities, LLC; Evan A. Schottenstein; and Avi E. Schottenstein, Jointly and Severally, Respondents*, FINRA Case No. 19-02053 (the "Arbitration"). *Id.*

In the pending Arbitration, Beverley Schottenstein ("Beverley") alleges that Petitioners, while employed as financial advisors at JP Morgan, made unauthorized purchases in securities in Claimant's JP Morgan brokerage account. *Id.* at p. 3. Beverley further alleges that Petitioners enrolled her in electronic delivery of monthly account statements and other written communications without her consent. *Id.* She seeks damages in the Arbitration in excess of $10 million from Petitioners and JP Morgan. *Id.*

Petitioners in this federal action, who are the Respondents in the pending Arbitration, have denied these allegations in the Arbitration and have asserted that Beverley's granddaughter, Alexis Schottenstein ("Alexis"), has stoked the controversy based on her dissatisfaction with her treatment in Beverley's estate plan. [DE 1, p. 3]. Petitioners in this federal action believe that Alexis helped develop Beverley's claims against JP Morgan and themselves. *Id.* Beverley worked at Wells Fargo from 2009-2013 in its Largo, Florida bank branch. *Id.* Wells Fargo terminated Alexis in 2013 allegedly due to numerous customers' complaints that Alexis enrolled their respective Wells Fargo accounts in online statement delivery without the customers' knowledge and/or authorization. *Id.* So Petitioners in this federal action issued the subpoenas to Alexis Schottenstein and Wells Fargo requiring them to appear at the Arbitration, testify and produce

2

documents.

Beverley (the Claimant in the pending Arbitration) did not oppose Petitioners' Motion for the Alexis Schottenstein Trial Subpoena, but Alexis did object. [DE 20, p. 4]. On or about September 15, 2020, a majority of the Arbitration Panel signed the trial subpoena directed to Alexis. *Id.* On or about October 8, 2020, Petitioners provided the executed trial subpoena to Alexis Schottenstein's Florida counsel, and counsel advised Petitioners that Alexis would not comply with the Subpoena. *Id.*

On or about June 24, 2020, Petitioners filed a Motion for Subpoena for the Production of Documents from Wells Fargo Pursuant to the FINRA Code of Arbitration Procedure. [DE 20, p. 5]. Beverley opposed the Motion, but the Arbitration Chairperson deemed the documents Petitioners sought from Wells Fargo to be relevant to Petitioners' defenses, and the Arbitration Chairperson executed a Subpoena for Production to Wells Fargo. *Id.* On or about July 29, 2020, Petitioners served Wells Fargo with the Wells Fargo Subpoena through its registered agent in Florida. *Id.* Shortly thereafter, Wells Fargo filed its objections. *Id.* Petitioners later requested that the Arbitration Panel execute a trial subpoena directed to the records custodian of Wells Fargo. *Id.* On or about September 23, 2020, the Arbitration Chairperson overruled the Wells Fargo Objections, and a majority of the Arbitration Panel executed a trial subpoena for the testimony and production of documents from the Wells Fargo records custodian. *Id.* On or about October 8, 2020, Petitioners provided the executed Wells Fargo Trial Subpoena to Wells Fargo's counsel. *Id.* at p. 6. Wells Fargo's counsel advised Petitioners that Wells Fargo would not comply with the Subpoena. *Id.*

According to the Petitioners in this federal action, the Schottenstein Trial Subpoena and Wells Fargo Trial Subpoena are necessary and relevant to their defenses in the Arbitration. [DE 1,

p. 6]. Petitioners argue that the Wells Fargo Trial Subpoena seeks limited information and pertains directly to Beverley's allegations against Petitioners in the underlying Arbitration and that such information is both relevant and necessary for Petitioners to establish their defenses in the Arbitration. *Id.* Petitioners emphasize that the Arbitration Panel has already deemed such production of documents and testimony sought in the Schottenstein Trial Subpoena and Wells Fargo Trial Subpoena as relevant and critical. *Id.*

Arbitration Final Hearing dates are scheduled for December 14-18, 2020, and January 25-31, 2021, via Zoom video teleconference. [DE 15, p. 2, n. 1]. Thus, the Court has treated this matter with urgency in an effort to resolve this federal subpoena enforcement action promptly so as not to unnecessarily delay the Arbitration.

## II.     SUBJECT MATTER JURISDICTION

The seminal issue for this federal court to decide is whether it has subject matter jurisdiction over this subpoena enforcement proceeding. In the Petition filed in this case, Petitioners make the following allegations regarding subject matter jurisdiction:

> 7. This is a proceeding to enforce arbitration subpoenas (summonses) arising under Section 7 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 7.
>
> 8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties to the underlying arbitration are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

[DE 1, p. 2].

At the December 3, 2020 hearing, the Court expressed its concern as to whether it has subject matter jurisdiction over this case. Because the issue had not been briefed by the parties, the Court requested and the parties agreed to complete targeted supplemental briefing. The parties have now submitted their briefs [DEs 23-25], and the Court has carefully considered them.

"[T]his court has the obligation to inquire into subject matter jurisdiction whenever it may be lacking." *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1155 (11th Cir. 2019) (quoting *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1468 (11th Cir. 1997)). The Federal Arbitration Act ("FAA") does not create independent federal question jurisdiction. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983) ("The [Federal] Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 . . . or otherwise.").

Thus, in an action brought under the FAA, the petitioner must show that there is sufficient jurisdiction, as explained by the Eleventh Circuit:

> It is a long-accepted principle that the FAA is non-jurisdictional: The statute does not itself supply a basis for federal jurisdiction over FAA petitions. The Supreme Court described the non-jurisdictional cast of the statute in Vaden this way: As for jurisdiction over controversies touching arbitration, however, the FAA is something of an anomaly in the realm of federal legislation: It bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis' over the parties' dispute. Thus, although the FAA enlarges the range of remedies available in the federal courts, it does not supply an independent basis for federal jurisdiction. Therefore, the parties must identify an independent basis for federal jurisdiction over a petition to compel arbitration brought pursuant to the FAA.

*Cmty. State Bank v. Strong*, 651 F.3d 1241, 1252 (11th Cir. 2011) (internal citations and quotation marks omitted).

In the case at hand, Petitioners allege diversity jurisdiction pursuant to 28 U.S.C. § 1332 as the sole basis for subject matter jurisdiction. Pursuant to 28 U.S.C. § 1332, diversity jurisdiction only exists when the parties to the federal court action are citizens of different states and the amount in controversy exceeds $75,000. However, Petitioners' assertion of federal diversity

5

jurisdiction is not based upon the parties and amount in controversy in this federal court subpoena enforcement proceeding; rather, it is based on the diversity of the parties and amount in controversy in the pending Arbitration. That pending Arbitration, however, is not in federal court.

Here, Petitioners have conceded that there is not complete diversity of the parties in this subpoena enforcement proceeding because Respondent Alexis Schottenstein and Petitioners Avi and Evan Schottenstein are all citizens of New York. Thus, there is not complete diversity of parties in this federal subpoena enforcement proceeding. Moreover, Petitioners seemingly conceded at the hearing that the amount in controversy in this subpoena enforcement proceeding does not exceed $75,000; at the very least, Petitioners have made no effort to establish the value of the amount in controversy in this federal court proceeding. Instead, Petitioners argue that the relevant inquiry for determination of diversity jurisdiction is the amount in controversy and the state citizenship of the parties in the pending Arbitration, rather than in this federal court subpoena enforcement proceeding. That is, Petitioners argue that this Court should ignore the diversity problems which exist in this federal subpoena enforcement proceeding and instead look through to the Arbitration and determine diversity jurisdiction based on the parties and amount in controversy in the Arbitration.

The Court rejects Petitioners' argument that the Court should ignore the lack of diversity jurisdiction in this subpoena enforcement proceeding and instead look to the Arbitration to determine diversity jurisdiction. Petitioners suggest that this is a "gray area." [DE 24, p. 2]. However, it is clear that the Arbitration is not before this Court; only the subpoena enforcement action is before this Court. There is an abundance of case law that holds that the relevant inquiry is not whether the parties to the underlying arbitration are diverse, but rather whether the parties to the federal court action are diverse. This case law also holds that courts should determine

whether the amount in controversy in the federal court action, and not in the underlying arbitration, exceeds $75,000. *See, e.g., Wash. Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F. 3d 126 (2nd Cir. 2020) (holding that, when evaluating whether diversity jurisdiction exists for purposes of 28 U.S.C. § 1332, a court should only consider the citizenship of the parties before the court, and should not look through to an underlying arbitration for determining citizenship); *Royal Merchant Holdings, LLC v. Traeger Pellet Grills, LLC*, 2019 WL 2502937, at *4-5 (D. Utah June 17, 2019) ("[T]he Court must look to the parties and amount in controversy in this action, without reference to the underlying arbitration, to determine whether subject matter jurisdiction exists."); *Hermes of Paris, Inc. v. Swain*, 867 F.3d 321 (2nd Cir. 2017) ('a court assessing its jurisdiction over an FAA Petition is to look 'only to the citizenship of the parties in the action before it''); *Zurich Ins. PLC v. Ethos Energy (USA) LLC*, 2016 WL 4363399, at *2-3 (S.D. Tex. Aug. 16, 2016) (rejecting the argument that the $7 million in damages sought in the underlying arbitration satisfied the amount in controversy requirement); *see also Chicago Bridge & Iron Co. N.V. v. TRC Acquisition, LLC*, 2014 WL 3796395, at *2 (E.D. La. July 29, 2014) ("Nor have the plaintiffs provided the Court with any facts that would justify a finding that the amount in controversy in this proceeding meets the jurisdictional threshold."). The Court agrees with these cases.

There is only one relevant opinion from a court within the Eleventh Circuit identified by any of the parties in their supplemental briefing---*Shirvanian v. Byers*, Case No. 1:16-CV-21261-JLK/EGT, DE 22 (Sept. 22, 2016 S.D. Fla.), an unpublished opinion out of the Southern District of Florida. The court in that case rejected the respondent's position that there must be diversity jurisdiction between a petitioner and a non-party witness in the subpoena enforcement proceeding (rather than diversity jurisdiction in the underlying arbitration) and found that diversity was undeniably present in the underlying arbitration proceeding. Therefore, because diversity

7

jurisdiction was present in the underlying arbitration action, the *Shirvanian* court granted the motion to enforce the arbitral subpoena in the federal court action. This Court disagrees with the *Shirvanian* court for a number of reasons.

First, the *Shirvanian* opinion solely cited to *Amgen, Inc. v. Kidney Ctr. of Delaware Cty., Ltd.*, 95 F.3d 562, 567 (7th Cir. 1996), and noted that the respondent had failed to cite any case law in support of his position that diversity jurisdiction must exist between the petitioners and the respondent in the federal court subpoena enforcement proceeding – rather than in the underlying arbitration action. So, the first distinction between *Shirvanian* and the instant case is that, in *Shirvanian*, the respondent wholly failed to submit any case law to the court to support its position; however, in this case, Respondents have submitted extensive case law to support their position that complete diversity must exist between the parties in this federal court subpoena enforcement proceeding.

Second, although the court in *Shirvanian* correctly noted that, in *Amgen*, the Seventh Circuit held that it is proper to look through a FAA Section 7 petition to the underlying arbitration to determine the amount in controversy, *Amgen, Inc.*, 95 F.3d at 567, other circuits have subsequently rejected *Amgen*. Specifically, the Second, Fifth, and Tenth Circuits have rejected the Seventh Circuit's approach to this issue. Therefore, in light of subsequent case law rejecting *Amgen*, the Court declines to follow it.

Third, the *Amgen* case relied on by the *Shirvanian* court is distinguishable because, in *Amgen*, neither of the parties to that action had directly addressed the question of subject matter jurisdiction and, therefore, the Seventh Circuit had to consider the issue of subject matter jurisdiction in the absence of briefing and argument. 95 F.3d at 567. In contrast, in the instant case, the Court directed the parties to properly brief the issues so that the competing case law could be

8

properly and carefully analyzed. The Court finds that *Amgen* is neither controlling nor persuasive in this court. Although the Eleventh Circuit has not weighed in on *Amgen*, this court agrees with the Second, Fifth and Tenth Circuit opinions which have rejected *Amgen.*

Fourth, this Court has carefully reviewed and considered the opinion of the Honorable Edwin G. Torres, United States Magistrate Judge, in *Shirvanian*, the sole case relied on by Petitioners in their brief (other than *Amgen*, which is cited in *Shirvanian*) and respectfully declines to follow *Shirvanian*. The *Shirvanian* opinion appears to be at least partially rooted in the concern that it is "not evident how a federal court would ever acquire subject matter jurisdiction over a Section 7 petition for an out of state nonparty witness" if courts were not allowed to consider diversity in the underlying arbitration. However, at least one court has found diversity jurisdiction in this type of arbitration action without considering the diversity of the parties and the amount in controversy in the arbitration proceeding itself. *See Me. Cmty. Health Options v. CVS Pharm., Inc.*, 2020 U.S. Dist. LEXIS 40313, 2020 WL 1130057 (D. R.I. 2020). Likewise, in *OBEX Grp. LLC*, 958 F.3d 126, 135, the Second Circuit found that the value of the documents in the subpoena enforcement proceeding exceeded the sum or $75,000. Furthermore, there is an abundance of relevant contrary case law that arose subsequent to the *Shirvanian* opinion, as noted above. It is very possible that Judge Torres would have ruled differently if such case law was available to him.

This Court believes that it must look to the subpoena enforcement proceeding pending in federal court to determine diversity jurisdiction. And, if the parties here are not completely diverse, or if the amount in controversy here does not exceed $75,000, then diversity jurisdiction simply does not exist and the subpoenas cannot be enforced. This procedure—looking to the parties and amount in controversy in this federal case—provides clarity and certainty in determining the important seminal issue of subject matter jurisdiction. The parties are before this Court, so this

9

Court can require affidavits or other evidence to establish diversity jurisdiction. Conversely, the parties to an arbitration are not before this Court, and a party could be dropped or added in arbitration or the amount in controversy could change in arbitration, which might affect diversity, without this Court even being aware of such a change. Clarity and consistency require that this Court look solely to this pending federal court subpoena enforcement proceeding to determine diversity jurisdiction, and not to the pending Arbitration.

Further, if there is a problem in the language of the FAA which makes it difficult for a party to an arbitration to enforce arbitral subpoenas due to federal jurisdictional issues (or other issues), the remedy is for Congress to correct the problem—not the courts. Federal courts are courts of limited jurisdiction, and, when subject matter jurisdiction is lacking, as in this case, a federal court simply cannot act. If Congress wishes the FAA to confer subject matter jurisdiction on federal courts, or if it wishes to take other action to remedy the jurisdictional problem evident in this case, Congress must say so. As the FAA is written, Petitioners must establish an independent basis for this Court's subject matter jurisdiction, and they have failed to do so. There is simply no diversity jurisdiction in this arbitral subpoena enforcement proceeding. This Court cannot judicially remedy the FAA to make it more user friendly to permit parties in arbitration to more easily enforce arbitral subpoenas. Although this result might seem unfair to Petitioners, such result is necessitated by the applicable statutory law and the fact that federal courts are courts of limited jurisdiction.

### III.   SUMMARY

In sum, it is clear that a majority of federal courts which have addressed this issue have found that a petitioner must establish diversity jurisdiction between the petitioner and non-party in the federal proceeding to enforce arbitration subpoenas arising under Section 7 of the Federal

Arbitration Act ("FAA"), 9 U.S.C. § 7. Those courts have found that complete diversity must exist in the federal arbitral subpoena enforcement proceeding. The Court agrees with the holdings and logic of those courts. This Court will not look through this Section 7 arbitral enforcement proceeding to the underlying Arbitration to determine diversity jurisdiction.

Here, in this federal proceeding, there is no subject matter jurisdiction. Petitioners have failed to establish that diversity jurisdiction exists, as they must. They have also failed to establish an amount in controversy exceeding $75,000. Therefore, Petitioners' request to enforce the two arbitral subpoenas must be denied. There is no need to consider the remaining issues argued by Petitioners and Respondents in their papers[1] as this Court lacks subject matter jurisdiction over this federal subpoena enforcement proceeding and cannot provide any relief to Petitioners.

## IV.    CONCLUSION

In light of the foregoing, the Petition to Enforce Arbitration Subpoenas [DE 1] is **DENIED** because Petitioners have failed to establish that the Court has subject matter jurisdiction to enforce compliance with either of the arbitration trial subpoenas.

---

[1] Petitioners additionally argued that, pursuant to Fed.R.Civ.P. 45, Alexis Schottenstein cannot be compelled by subpoena to travel more than 100 miles from her residence in New York to testify or produce documents; that the documents sought from both Respondents are private and confidential; that *Managed Care Advisory Group, LLC*, 939 F.3d 1145 (11th Cir. 2019), holds that non-parties can only be forced to produce documents when accompanying the requested items to an in-person hearing before an arbitrator (and not to a Zoom video teleconference hearing as is being held in the underlying Arbitration); and that the Wells Fargo subpoena is overbroad. Although these are interesting issues, they need not be addressed by this Court as subject matter jurisdiction is lacking in this federal arbitral subpoena enforcement proceeding and therefore this Court should proceed no further.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 17th day of December, 2020.

WILLIAM MATTHEWMAN
United States District Judge